SANFORD JAY ROSEN – 062566
ERNEST GALVAN – 196065
BENJAMIN BIEN-KAHN – 267933
MARC. J. SHINN-KRANTZ – 312968
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104

HARA FISCHBEIN – Florida Bar No. 1032775*
LOREE STARK – West Virginia Bar No. 12936*
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Telephone:  (561) 360-2523
Facsimile:    (561) 828-8166
 * *Pro Hac Vice* Application to be filed

Attorneys for
HUMAN RIGHTS DEFENSE CENTER

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MADERA; TYSON J. POGUE, Sheriff, individually and in his official capacity; DARIN MCMECHAN Undersheriff, individually and in his official capacity; BRIAN ESTEVES, Assistant Sheriff, individually and in his official capacity; and JOHN AND JANE DOES 1-10, Staff, individually and in their official capacities,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE,  § 52.1, AND THE CALIFORNIA CONSTITUTION**<br><br>**JURY TRIAL DEMANDED** |

[4246596.1]

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. Plaintiff Human Rights Defense Center ("HRDC" or "Plaintiff") brings this action to enjoin Defendants from censoring publications and correspondence that it mails to incarcerated persons at the Madera County Jail (the "Jail"). Defendants have adopted and implemented mail policies and practices that unconstitutionally prohibit delivery of publications and correspondence mailed by Plaintiff to persons incarcerated at the Jail, and that deny due process of law to senders, like Plaintiff, whose mail is censored, by failing to provide adequate notice and an opportunity to challenge each instance of censorship. Plaintiff alleges that Defendants' actions violate its rights under the First and Fourteenth Amendments to the United States Constitution; Article I, Section 2 and Article I, Section 7 of the California Constitution; and the Bane Act, Cal. Civ. Code § 52.1, and seeks injunctive and declaratory relief, and damages in an amount to be proven at trial pursuant to 42 U.S.C. § 1983 and California law.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides within this judicial district and the events giving rise to the claims asserted herein all occurred within this judicial district.

4. Plaintiff's claims for relief under federal law are brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the First and Fourteenth Amendments to the United States Constitution and laws of the United States.

5. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages, against all Defendants,

and punitive damages against the individual defendants in their personal capacities.

6. Plaintiff's claim for attorneys' fees and costs for its federal claims is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiff's claims under federal law.

8. Plaintiff's claims for relief under state law are predicated upon the Bane Act (Cal. Civ. Code § 52.1), which authorizes actions to protect the exercise or enjoyment of rights secured under federal or California law, as well as upon the direct causes of action to enforce constitutional rights guaranteed under Article I, Section 2 and Article I, Section 7 of the California Constitution.

9. Plaintiff's claim for attorneys' fees and costs under state law is predicated upon California Civil Code § 52.1, which authorizes the award of attorneys' fees and costs in an action brought under that statute, and California Code of Civil Procedure § 1021.5, which authorizes the award of attorneys' fees and costs to successful plaintiffs whose actions vindicate important rights affecting the public interest.

10. Plaintiff is informed, believes, and based thereon alleges that the individual Defendants as described herein acted with reckless disregard for Plaintiff's rights and/or with the intent to injure, vex, annoy and harass Plaintiff, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights with the intention of causing Plaintiff injury and depriving it of its constitutional rights. As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against the individual Defendants.

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES FOR STATE LAW CLAIMS**

11. Plaintiff submitted a state tort claim for damages to Defendant COUNTY OF MADERA on June 29, 2022. Defendant COUNTY OF MADERA notified Plaintiff that the claim was rejected by letter dated both September 8 and September 6, 2022, but

postmarked September 9, 2022.

**PARTIES**

12. Plaintiff HUMAN RIGHTS DEFENSE CENTER is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Lake Worth, Florida. For over thirty years, HRDC has focused its mission on public education, advocacy and outreach to incarcerated persons and the public about the economic and social costs of prisons to society, and to help incarcerated persons educate themselves about their constitutional and human rights and to learn about accessing education while incarcerated. HRDC accomplishes its mission through advocacy, litigation, and publication and/or distribution of books, magazines and other information concerning prisons and the rights of incarcerated persons. Prison Legal News is a wholly-owned project and publishing arm of HRDC. Through its publishing project, HRDC engages in core protected speech and expressive conduct on matters of public concern, such as the operation of correctional facilities, prison and jail conditions, and the health, safety and constitutional and human rights of incarcerated persons. HRDC publishes and distributes two monthly magazines covering corrections and criminal legal news and analysis, and publishes and distributes books about the criminal legal system and legal issues affecting incarcerated persons, which HRDC distributes by mail to incarcerated persons, lawyers, courts, libraries, and the public throughout the United States.

13. Defendant COUNTY OF MADERA (the "County") is a political subdivision of the State of California organized and existing under the laws of California. The County is, and at all relevant times herein was, responsible for the actions and/or inactions and the policies, procedures, customs, and practices of the Madera County Sheriff's Office and its employees and agents. The Madera County Sheriff's Office is and was responsible for adopting and implementing mail policies governing incoming mail for incarcerated persons at the Madera County Jail.

14.     Defendant TYSON J. POGUE is the Sheriff of Madera County and has held that position since June 2020.  Defendant POGUE is employed by and is an agent of Defendant COUNTY OF MADERA and the Madera County Sheriff's Office.  He is responsible for overseeing the management and operations of the Madera County Jail, and for the hiring, screening, training, supervision, discipline, counseling, and control of the personnel at the Madera County Jail who interpret and apply its incoming mail policies.  As Sheriff, Defendant POGUE is a final policymaker for Defendant COUNTY OF MADERA with respect to the operation of the Madera County Jail, including for policies and practices governing incoming mail for incarcerated persons.  He is sued in his individual and official capacities.

15.     Defendant DARIN MCMECHAN is the Undersheriff of Madera County and has held that position since August 1, 2022, prior to which he served as the Assistant Sheriff assigned to the Madera County Jail since approximately August 2021.  Defendant MCMECHAN is employed by and is an agent of Defendant COUNTY OF MADERA and the Madera County Sheriff's Office.  He is responsible for overseeing the management and operations of the Madera County Jail, and for hiring, screening, training, supervision, discipline, counseling, and control of the personnel at the Madera County Jail who interpret and apply its incoming mail policies.  As Undersheriff, Defendant MCMECHAN is a policymaker for Defendant COUNTY OF MADERA with respect to the operation of the Madera County Jail, including for policies and practices governing incoming mail for incarcerated persons.  Plaintiff is informed and believes that, prior to August 2022, in his role as the Assistant Sheriff for the Madera County Jail, Defendant MCMECHAN was responsible for making the final decision as to whether specific magazines, periodicals or books mailed to incarcerated persons at the Madera County Jail would be rejected.  He is sued in his individual and official capacities.

16.     Defendant BRIAN ESTEVES is the Assistant Sheriff for the Madera County Sheriff's Jail Division, and has held that position since approximately September 2022.  Defendant ESTEVES is employed by and is an agent of Defendant COUNTY OF

MADERA and the Madera County Sheriff's Office.  He is responsible for overseeing the management and operations of the Madera County Jail, and for hiring, screening, training, supervision, discipline, counseling, and control of the personnel at the Madera County Jail who interpret and apply its incoming mail policies.  As Assistant Sheriff, Defendant ESTEVES is a policymaker for Defendant COUNTY OF MADERA with respect to the operation of the Madera County Jail, including for policies and practices governing incoming mail for incarcerated persons, and is responsible for making the final decision as to whether specific magazines, periodicals or books mailed to incarcerated persons at the Madera County Jail will be rejected.  He is sued in his individual and official capacities.

17. The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC.  Each of Defendants DOES 1 through 10 are or were employed by and are or were agents of Defendant COUNTY OF MADERA and were personally involved in the adoption and/or implementation of the policies and practices governing incoming mail for incarcerated persons at the Madera County Jail, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the Madera County Jail personnel who interpret and implement these incoming mail policies and practices.  They are sued in their individual and official capacities.  HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 10 have been ascertained.

18. At all times material to this action, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

19. At all times material to this action, all Defendants were acting within the course and scope of their employment as agents and/or employees of Defendant COUNTY OF MADERA.

## FACTUAL ALLEGATIONS

20. For over thirty years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, incarcerated persons who seek legal redress for infringements of their constitutionally

guaranteed and other basic human rights.  HRDC's mission, if realized, has a salutary effect on public safety.

21. To accomplish its mission, HRDC publishes and distributes books, magazines, and other materials containing news and analysis about prisons, jails and other detention facilities, the rights of incarcerated persons, court rulings, management of prison facilities, prison and jail conditions, and other matters pertaining to the rights and/or interests of incarcerated persons.  HRDC's publications contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the United States Constitution and the California Constitution.

22. Sending publications through the mail to incarcerated persons is essential to accomplishing the mission of HRDC.  The primary aim of HRDC is to communicate with incarcerated persons about developments in the law and protection of one's health and personal safety while in prison or jail.  Reading materials enable incarcerated persons to engage in productive activity rather than sitting idle, thus helping to avoid conflicts and incidents of violence in correctional facilities and encouraging lawful methods of dispute resolution.  In addition, reading allows incarcerated persons to keep their minds sharp, helping them prepare to become productive citizens when released back into society.

23. HRDC publishes and distributes an award-winning monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights* ("*Prison Legal News*"), which contains news and analysis about correctional facilities, the rights of incarcerated persons, court opinions, prison and jail conditions, excessive force, and religious freedom.  *Prison Legal News* is published on newsprint bound by two small staples, and is 72 pages long.

24. HRDC also publishes and distributes a second monthly magazine titled *Criminal Legal News*, which contains news and analysis about individual rights, court rulings, and other criminal legal-related issues.  *Criminal Legal News* is also published on newsprint bound by two small staples, and was 48 pages long, but has more recently expanded to 56 pages long.

25. HRDC also publishes and/or distributes several different soft-cover books on criminal justice, health, and legal issues that are of interest to incarcerated persons and others. HRDC publishes and distributes the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Handbook*"), which provides information on enrolling at accredited higher educational, vocational and training schools. HRDC does not publish, but is the sole national distributor of *Protecting Your Health and Safety* ("*PYHS*"), which describes the rights, protections and legal remedies available to persons concerning their health and safety while they are incarcerated.

26. In addition to its publications, HRDC also communicates with incarcerated persons through the United States Postal Service by mailing them: (a) informational brochure packets, which contain a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page); (b) copies of judicial opinions of importance to incarcerated persons, which are marked "Court Ruling;" and (c) letters that provide pertinent information about HRDC's publications and related topics, including subscription renewal letters sent to subscribers to its magazines when the subscriptions are nearly over, in the hopes of renewing the subscription. HRDC encloses a self-addressed, stamped envelope with its informational brochure packets and subscription renewal letters, but does not enclose extra envelopes or stamps with the informational brochure packets, judicial opinions, or other letters that it mails to incarcerated persons.

27. Since 1990, HRDC has sent its publications by mail to incarcerated persons and law librarians in more than 3,000 correctional facilities in all fifty states, including at death row housing units and "supermax" prisons, including the federal Administrative Maximum Facility at Florence, Colorado, which is known as the most secure prison in the United States. The publications and books that HRDC distributes are mailed to hundreds of persons incarcerated in California jails and prisons, including at San Diego County's Central Jail, Vista Detention Facility, East Mesa Detention Facility, South Bay Detention Facility, and George F. Bailey Detention Facility; the Los Angeles County Jails, including

1  the Twin Towers Correctional Facility; Orange County's Theo Lacy Facility; San
2  Bernardino County's West Valley Detention Center; Riverside County's Larry D. Smith
3  Correctional Facility; Sacramento County's Rio Cosumnes Correctional Center; the Fresno
4  County Jail; the Humboldt County Correctional Facility; the Santa Clara County Main Jail;
5  Alameda County's Santa Rita Jail and Glenn E. Dyer Detention Facility; Contra Costa
6  County's Martinez Detention Facility; the Butte County Jail; the San Joaquin County Jail;
7  the Ventura County Jail; the San Luis Obispo County Jail; the Santa Barbara County Jail;
8  the Tulare County Main Jail; the Tehama County Jail; Placer County's Auburn Jail; the
9  Napa County Jail; the Sonoma County Detention Facility; and at the prisons run by the
10 California Department of Corrections and Rehabilitation and the California Department of
11 State Hospitals' secure hospital facilities throughout the state.  In its more than 30-year
12 history, HRDC is not aware of and has never been notified of any security incident caused
13 by any of its publications or correspondence at any jail, prison, or other detention facility.
14         28.    The Madera County Sheriff's Office Custody Manual, dated February 3,
15 2023 ("Custody Manual"), is available on the public website of the County of Madera at
16 https://www.maderacounty.com/government/madera-county-jail/custody-manual (last
17 visited March 6, 2023), which includes a hyperlink to a PDF of the Custody Manual at
18 https://www.maderacounty.com/home/showpublisheddocument/33378/638110265352530
19 000 (last visited March 6, 2023).  Defendants' current policy on incoming mail for persons
20 incarcerated at the Madera County Jail, Policy 1009 ("Mail Policy"), is recorded on pages
21 454 to 458 of the PDF of the Custody Manual (internally paginated as pages 455 to 459).
22 Plaintiff is informed and believes that no policy on incoming mail for persons incarcerated
23 at the Madera County Jail, which may have been in effect prior to the February 3, 2023
24 Custody Manual, was made available to the public by Defendants on the County of
25 Madera's public website.
26 / / /
27 / / /
28 / / /

29. Defendants' Mail Policy provides, in pertinent part:

When mail is found to be inappropriate in accordance with the provisions of this policy or when an incarcerated person is sent material that is not prohibited by law but is considered contraband by the facility, the material may be returned to the sender or held in the incarcerated person's property to be given to the incarcerated person upon release.

…

Notices should be sent to the sender of censored correspondence or publications, even when the sender is the editor or publisher. A single notification may be sent if the publication is received by multiple incarcerated persons.

…

Unless otherwise in conflict with this policy and prohibited by the Assistant Sheriff, incarcerated persons are permitted to purchase, receive, and read any book, newspaper, periodical, or writing accepted for distribution by the U.S. Postal Service (15 CCR 1066(a)).

Publications, magazines, or newspapers shall be accepted only if they are mailed directly from the publisher to a named incarcerated person.

…

The Sheriff's Office may reject magazines, periodicals, and other materials that may inhibit the reasonable safety, security, and discipline in the daily operation of this facility. Generally, books, newspapers, and magazines are accepted only if they are sent directly by the publisher. Materials that may be rejected include but are not limited to (15 CCR 1066(a)):

- Materials that advocate violence or a security breach.

- Literature that could incite racial unrest.

- Sexually explicit material, including pornographic magazines, nude pictures, or pictures or descriptions of sexually explicit activities.

- Obscene publications or writings and mail containing information concerning where or how such matter may be obtained; any material that would have a tendency to incite murder, arson, riot, violent racism, or any other form of violence; any material that would have a tendency to incite crimes against children; any material concerning unlawful gambling or unlawful lottery; any material containing information on the manufacture or use of weapons, narcotics, or explosives or any other unlawful activity.

- Material that could lead to sexual aggression or an offensive environment for incarcerated persons.

- Material that could create a hostile or offensive work environment.

- Any material with content that could reasonably demonstrate a legitimate government interest in rejecting the material.

Staff shall notify the Watch Commander whenever a decision is made to reject books, magazines, or periodicals. The Assistant Sheriff or the authorized designee will be responsible for making the final decision as to the specific magazines, periodicals, and other materials that will be prohibited within this facility.

30. Defendants' Mail Policy is unconstitutional on its face and as applied, and is unduly broad and vague. This is especially true because the books and magazines published and/or distributed by HRDC cover topics of great public concern and contain core protected speech, including political speech and social commentary, and educational information relating to the rights of incarcerated persons, pertinent legal cases, and incarcerated persons' health and safety, and are thus entitled to the highest protection afforded by the First Amendment to the United States Constitution and the California Constitution. There is no legitimate penological justification for Defendants to refuse to accept books and other publications for delivery at the Jail unless they are "mailed directly from the publisher," and the grounds whereby Defendants may reject mailed publications listed in Defendants' Mail Policy are overly broad and/or too vague for a sender to understand what is prohibited and what is permissible. Defendants' Mail Policy also does not provide for any appeals process by which a sender may challenge a decision by Defendants to reject publications or other mailings for delivery to incarcerated persons at the Jail.

31. From March 2022 to the present, Defendants have been censoring books, magazines and other correspondence mailed by HRDC to incarcerated persons held in custody at the Jail by refusing to deliver the publications and correspondence to the intended recipients, and by returning the items to HRDC's office via the Return to Sender service of the United States Postal Service, at Plaintiff's expense.

32. HRDC has identified at least twenty-six (26) instances since March 2022 where publications and correspondence that HRDC mailed to incarcerated persons, individually addressed and separately mailed with postage fully paid, were not delivered to

intended recipients who were still incarcerated at the Jail when the items arrived in the mail. This includes ten (10) copies of *PYHS*, nine (9) copies of the *Prisoners' Handbook*, three (3) issues of *Prison Legal News*, three (3) issues of *Criminal Legal News*, and one (1) letter containing a copy of a judicial opinion. Each of these items was not delivered to the intended recipient at the Jail, and was instead returned to HRDC's office by Defendants using the Return to Sender service of the United States Postal Service. For each of these instances, HRDC staff confirmed that the intended recipient was still incarcerated at the Jail at the time that the mailing was returned to HRDC via the Return to Sender service.

33. The publications and correspondence that Defendants refused to deliver to incarcerated persons at the Jail have been returned to Plaintiff marked in various ways, including with the abbreviation "RTS" handwritten in ink and/or with an ink stamp containing the words "MADERA COUNTY JAIL DIVISION" and the phrase "RETURN TO SENDER" inside an image of a hand pointing to the left, followed by five short statements directly underneath which read as follows:

> Reason checked:
> ☐ Not in custody
> ☐ Envelopes, paper, stamps unacceptable
> ☐ Stickers unacceptable
> ☐ Other _____

In all but one instance of rejected mailings, Defendants did not mark or otherwise note any reason why Plaintiff's mailing was rejected for delivery to the intended recipient.

34. Defendants refused to deliver nineteen (19) soft-cover books mailed by HRDC to incarcerated persons at the Jail—ten (10) copies of *PYHS*, and nine (9) copies of the *Prisoners' Handbook*. Of these, five (5) books were returned to HRDC with only the abbreviation "RTS" handwritten in ink on the outside of the item of mail, with no information as to why Defendants refused to deliver them to the intended recipients. The remaining fourteen (14) books were returned to HRDC with both the handwritten abbreviation "RTS" and with the above-described ink stamp on the outside of the item of

mail, but with none of the listed reasons for refusing to deliver the mailings checked, and no other information provided as to why Plaintiff's mailings were rejected by Defendants.

35.     Defendants also refused to deliver six (6) issues of HRDC's magazines to incarcerated persons at the Jail—three (3) copies of the March 2022 issue of *Prison Legal News*, and three (3) copies of the April 2022 issue of *Criminal Legal News*.  None of the returned magazines included either the ink stamp or the handwritten abbreviation "RTS," described above.  The only information as to why the magazines were not delivered to the intended recipients were typed notations, which appear to have been generated by the United States Postal Service's Return to Sender service, rather than by Defendants.  Each rejected issue of Prison Legal News simply includes the typed phrase "*Attempted – Not Known*," and each rejected issue of Criminal Legal News only includes the typed phrase "*Not Deliverable As Addressed*," with no other information as to the basis for Defendants' decision to refuse to deliver the magazines to their intended recipients.

36.     Defendants refused to deliver one (1) letter containing a judicial opinion that was mailed by HRDC to an incarcerated person at the Jail.  The letter was returned with the above-described ink stamp on the envelope, with the "not in custody" box checked as the reason it was not delivered to the intended recipient.  However, HRDC's staff determined that the intended recipient was still in custody at the Madera County Jail at the time the letter was returned to HRDC via the Return to Sender service.

37.     Plaintiff is informed and believes that other publications and correspondence mailed by HRDC to persons incarcerated at the Jail have also been censored by Defendants.

38.      Defendants did not provide HRDC with notice or opportunity to appeal the censorship decisions in any of the instances where Defendants refused to deliver its publications and correspondence mailed to persons incarcerated at the Jail.  Although Defendants' current Mail Policy states that "[n]otices should be sent to the sender of censored correspondence or publications, even when the sender is the editor or publisher," Defendants did not provide HRDC with notice of the reason any mailing was rejected

beyond vague markings on the outside of items returned via the United States Postal Service's Return to Sender service.  Nowhere on the returned items of mail was notice provided of a right to challenge the censorship decision, or any information on whether or how HRDC could appeal Defendants' rejection of the items of mail.  In each instance of censorship, Defendants also did not provide HRDC any opportunity to appeal the decision to refuse to deliver the publication or correspondence to the intended recipient.  Nor does Defendants' current Mail Policy provide for any appeals process by which a sender may challenge a censorship decision.  Even after HRDC submitted a government tort claim to the County of Madera regarding the censorship and violation of its right to due process, Defendants did not provide any notice of the reason(s) for the rejections of HRDC's mailings or an opportunity to appeal the censorship decisions.

39.     Defendants' conduct prohibiting or not delivering HRDC's mailed publications and correspondence to persons incarcerated at the Jail violates the First Amendment by censoring HRDC's freedom of speech and expression, and has a chilling effect on future speech and expression directed at the persons incarcerated at the Jail.

40.     HRDC will continue to mail books, magazines, and other correspondence to subscribers, customers, and other persons incarcerated at the Jail.

41.     The accommodation of the free speech, free expression, and due process rights of HRDC will not have any significant impact on the Jail's staff, other incarcerated persons at the Jail, Defendants' allocation of resources, or security at the Jail.

42.     Due to Defendants' actions as described above, HRDC has suffered damages, and will continue to suffer damages, including, but not limited to:  the suppression of HRDC's speech and press; the impediment of HRDC's ability to disseminate its political message; frustration of HRDC's non-profit organizational mission; diversion of resources; the loss of potential subscribers and customers; an inability to recruit new subscribers and supporters; the loss of reputation; and the cost of printing, handling, mailing, and staff time, among other damages.

43. The individual Defendants' actions and inactions were and are undertaken with reckless disregard for Plaintiff's rights and/or motivated by ill motive and intent, and were and are all committed under color of law with deliberate indifference to HRDC's rights.

44. The individual Defendants, and other agents of the Defendant County, are responsible for or personally participated in creating and implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them. Further, the individual Defendants are responsible for training and supervising the staff persons whose conduct has injured and continues to injure HRDC.

45. Defendants' unconstitutional policy, practices, and customs are ongoing, continue to violate HRDC's rights, and were and are the moving force behind the injuries HRDC suffered as a direct result of the constitutional violations. As such, HRDC has no adequate remedy at law.

46. Plaintiff is entitled to injunctive relief prohibiting Defendants from refusing to deliver or refusing to allow delivery of publications and correspondence mailed by HRDC to incarcerated persons at the Madera County Jail, and prohibiting Defendants from censoring mail without due process of law.

**FIRST CLAIM FOR RELIEF**
*(Violations of the First Amendment (Free Speech)—42 U.S.C. § 1983)*

47. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. Defendants' acts described above constitute violations of HRDC's right to communicate with persons incarcerated at the Jail under the First Amendment to the United States Constitution.

49. Defendants' conduct was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

50. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

51. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

52. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

## SECOND CLAIM FOR RELIEF
*(Violation of the Fourteenth Amendment (Due Process)—42 U.S.C. § 1983)*

53. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54. HRDC has a constitutionally-protected liberty interest in communicating with persons incarcerated at the Jail by sending publications and correspondence to them via the United States Postal Service, a right clearly established under existing case law.

55. HRDC has the right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent the publications and correspondence mailed by HRDC to from reaching the incarcerated persons at the Jail to whom they were mailed.

56. Defendants have failed to give HRDC sufficient notice of the censorship of its publications and correspondence, and an opportunity to be heard with respect to that censorship. In doing so, Defendants have deprived and continue to deprive HRDC of liberty and property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

57. Defendants' conduct was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

58. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

59. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

60. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

**THIRD CLAIM FOR RELIEF**
*(Violation of the right to free speech—California Constitution Art. I, Sec. 2)*

61. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62. The acts described above constitute violations of HRDC's speech rights under Article 1, Section 2 of the California Constitution and have caused damage to HRDC, and will continue to cause damage.

63. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

64. As a result of Defendants' conduct, HRDC seeks declaratory and injunctive relief against all Defendants.

**FOURTH CLAIM FOR RELIEF**
*(Violation of the right to due process —California Constitution Art. I, Sec. 7)*

65. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. By failing to give HRDC sufficient notice of the censorship of its publications and correspondence and an opportunity to be heard with respect to that censorship, Defendants have deprived and continue to deprive HRDC of liberty and property without due process of law, in violation of Article I, Section 7 of the California

1  Constitution, and have caused damage to HRDC, and will continue to cause damage.

2      67.    HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

    68.    As a result of the Defendants' conduct, HRDC seeks declaratory and injunctive relief against all Defendants.

**FIFTH CLAIM FOR RELIEF**
*(Violations of the Bane Act—California Civil Code Sec. 52.1)*

    69.    HRDC re-alleges and incorporates the allegations of paragraphs 1 through 68 of the Complaint as if fully set forth herein.

    70.    By their actions as described above, Defendants, acting in conspiracy and/or in concert, with threat, intimidation, and/or coercion, violated HRDC's rights under California Civil Code § 52.1 and interfered with the exercise or enjoyment of HRDC's clearly established rights secured by the Constitution and laws of the United States and Constitution and laws of California.  Defendants' actions have caused actual damages to HRDC within the meaning of California Civil Code §§ 52 and 52.1.

    71.    Defendants' conduct described above was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

    72.    HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

    73.    As a proximate result Defendants' conduct, HRDC is also entitled to injunctive relief and an award of exemplary damages, civil penalties, and attorneys' fees, as provided by California Civil Code §§ 52 and 52.1.

/ / /

/ / /

/ / /

# REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests relief as follows:

1. A declaration that Defendants' policies, practices, and customs violate the First and Fourteenth Amendments to the United States Constitution; Article 1, Section 2 and Article 1, Section 7 of the California Constitution; and California Code Section 52.1;

2. A preliminary and permanent injunction preventing Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of HRDC's civil rights under the First and Fourteenth Amendments to the United States Constitution; Article 1, Section 2 and Article 1, Section 7 of the California Constitution; and California Code Section 52.1; and providing other equitable relief;

3. Nominal damages for each violation of HRDC's rights by the Defendants;

4. Compensatory damages in an amount to be proved at trial;

5. Punitive damages against the individual Defendants in an amount to be proved at trial;

6. Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and under other applicable law, including but not limited to California Civil Code § 52.1 and California Code of Civil Procedure § 1021.5; and

7. Any other relief that this Court deems just and equitable.

# JURY DEMAND

Plaintiff, by and through its attorneys, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

DATED: March 6, 2023
Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Benjamin Bien-Kahn*
Benjamin Bien-Kahn

Attorneys for
HUMAN RIGHTS DEFENSE CENTER